**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CR-67 RLW-NAB |
| | ) | |
| JOHNATHAN PALMER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendant Johnathon Palmer's Motion to Suppress Evidence and Statements [Doc. 47]. The United States (the "Government") filed a Response to Defendant's Motion to Suppress Evidence and Statements [Doc. 51]. On October 1, 2019, the undersigned held an evidentiary hearing. Palmer appeared in person and was represented by Assistant Federal Public Defender Mohammed Ahmed; the Government was represented by J. Christian Goeke. Following the hearing, both parties filed post hearing briefing.

For the foregoing reasons, the undersigned recommends that Palmer's motion be denied.

**I.     BACKGROUND**

Johnathon Palmer is charged by indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Government alleges that a weapon was found in Palmer's pants pocket when he was apprehended after fleeing from officers. In his Motion to Suppress Evidence and Statements, Palmer contends that it was unreasonable for officers to mistake him for a suspect who fled the scene following an attempted traffic stop. At the evidentiary hearing, St. Louis Metropolitan Police Department officer Anthony Meyer testified.

## II.    FINDINGS OF FACT

On December 31, 2018, St. Louis Police Officer Matthew James attempted to conduct a traffic stop of a black Pontiac G6 at the intersection of Farrar Street and Natural Bridge Avenue. The vehicle fled the traffic stop and traveled about 5 blocks eastbound on Farrar Street before turning north onto 25th Street where it lost control and crashed.  Officer Meyer was near the scene of the accident with his partner Brandon Clark.  Meyer heard a broadcast stating that a man fled from the vehicle.  The man was described as a black male, black jacket, gray pants, and a black hat. Officer Clark drove to the scene of the accident and the two of them spoke with Officer James. Officer James told them that the man who crashed the car was running eastbound from the location at 25th and Farrar.

Officers Clark and Meyer then drove north on 25th, east on Bremen, and north on North Florissant.  About six or seven minutes later, just north of Bremen on North Florissant, they found a person who matched the description of the person who fled from the crash.  As soon as the man saw the police vehicle, he looked back at them, clutching his waistband.  That's when they initiated a conversation with the man.  This man was a black male, moderate height, medium build, black jacket, gray pants, white tennis shoes.  Meyer believed the man matched the description that they received from Officer James.  After making initial contact with the man, Officer Meyer noticed that he was sweating and his heart was beating pretty fast.  He was also continuously clutching his waistband before he was handcuffed.  The man was handcuffed for officer safety and then Meyer conducted a pat down search.  During that search, he found a small revolver in the man's front pants pocket.  After he located the gun, Meyer placed the man, who he identified as defendant Palmer in the patrol vehicle.  Officers determined that Palmer had active warrants and was a convicted felon.  Meyer did not provide Miranda warnings to Palmer, nor did he question him.

Palmer was taken back to the scene of the accident and Officer James identified him as the person who ran from the vehicle. During the ride back to the scene, Palmer made two statements. He said he wasn't in the car and he bought the gun from a crackhead for thirty dollars. Meyer had not told Palmer that he was suspected of driving the car that was involved in the chase and accident.

## III.    LEGAL ANALYSIS

Palmer moves to suppress evidence and statements because he contends there was no probable cause for his arrest. He contends that the description of the driver was vague and implicated a large number of men in the area of the accident. He also claims that the description was incorrect because Palmer was wearing a black and gray jacket, and no hat, rather than a black jacket and black hat as described by Officer James. The Government maintains that under the totality of the circumstances, Officer Meyer had reasonable suspicion to stop and detain Palmer.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. An officer may stop and detain an individual if reasonable suspicion exists that the individual may be involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). To establish that a *Terry* stop was supported by reasonable suspicion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. The concept of reasonable suspicion is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). "Instead, in evaluating the validity of a *Terry* stop, [the Court] must consider the totality of the circumstances." *United States v. Quinn*, 812 F.3d 694, 697–98 (8th Cir. 2016) (citing *United States v. Cortez,* 449 U.S. 411, 417 (1981)). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *Quinn*, 812 F.3d at 697-98 (quoting *United*

3

*States v. Dawdy,* 46 F.3d 1427, 1429 (8th Cir. 1995)).   In addition, a person's temporal and geographic proximity to a crime scene, combined with a matching description of the suspect, can support a finding of reasonable suspicion.  *Quinn*, 812 F.3d at 698 (citing *United States v. Juvenile TK,* 134 F.3d 899, 903–04 (8th Cir. 1998)).  Officers are also allowed to conduct a pat-down search during a *Terry* stop.

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry v. Ohio* at 27.

Palmer contends that because of the vague description of the suspect, there was no constitutionally permissible reason to stop him.   Palmer claims that it was not objectively reasonable for the police to mistake him for the fleeing suspect.  Palmer, a black male, was wearing gray pants and a gray and black sweat jacket, and was located within 10 blocks of the suspect's last known location.  The description broadcast on the radio was for a black male, black jacket, gray pants and a black hat.  Officer Meyer testified that the description of a black male broadcast over the radio would fit 95 percent of the individuals in that neighborhood.  Therefore, Palmer contends officers did not have reasonable suspicion to stop him and there was no probable cause for his arrest.

The facts in this case are similar to *United States v. Quinn,* 812 F.3d 694 (2016).  In *Quinn*, Officers responded to a report of a wreck involving a stolen car.  Officers saw two other suspects run northbound from the scene of the accident.  The suspects were described as white males:  one

4

wore a blue hooded sweatshirt and the other wore a white t-shirt and had a long ponytail. *Quinn*, 812 F.3d at 696. Officer Jose Madera responded to a radio call to look for these suspects. He assisted other officers in establishing a perimeter around the scene. Madera activated his police lights and siren while establishing and patrolling the perimeter, a tactic used to get potential suspects to hide from the surrounding police officers rather than flee outside of the perimeter, which spanned several blocks. At 3:10 a.m., approximately forty minutes after the search began, Madera observed a white male in his mid-twenties wearing a dark t-shirt and jeans. The man, later identified as Quinn, emerged from an alley and began walking north, away from the stolen vehicle. After noticing that Quinn was "constantly looking over his left shoulder towards" Madera's police cruiser, Madera decided to conduct a pedestrian check. Officer Madera approached Quinn and asked for his name. Madera called for another officer, who had seen the suspects flee, to determine if the officer could identify Quinn. While waiting for the second officer, Madera handcuffed Quinn and performed a brief frisk. He did not discover any weapons. After the frisk, Madera entered his vehicle to check Quinn's criminal history, and he discovered that Quinn had an outstanding warrant for violating the terms of his probation. The time period between when Madera first approached Quinn and when he learned that Quinn had an outstanding arrest warrant was approximately three minutes. Madera placed Quinn under arrest and conducted a search, which revealed that Quinn was carrying a gun and a small amount of methamphetamine.

Quinn was indicted for being a felon in possession of a firearm. He filed a motion to suppress evidence, which the District Court denied. On appeal, Quinn argued that Officer Madera violated his Fourth Amendment rights because Madera did not have reasonable suspicion to conduct a *Terry* stop. *Id.* at 697. Quinn contended that his appearance did not match the suspects' descriptions: Quinn was wearing a dark t-shirt when Madera stopped him, whereas one suspect wore a white t-shirt, and the other a blue hooded sweatshirt. He argues that his similarity to the

suspects' traits—being white and male—was not sufficient to support reasonable suspicion.  The Eighth Circuit Court of Appeals disagreed, stating, "The fatal flaw in Quinn's approach is that he challenges the sufficiency of each factor in isolation from the rest.  The totality-of-the-circumstances test 'precludes this sort of divide-and-conquer analysis.'"  *Quinn*, 812 F.3d at 698 (citing *United States v. Arvizu,* 534 U.S. 266, 274, (2002)).  "An officer may have reasonable suspicion to conduct a *Terry* stop based on a combination of factors even where no single factor, considered alone, would justify a stop."  *Id.* at 698 (citing *Terry,* 392 U.S. at 22 (holding that although each of defendant's acts was "perhaps innocent in itself," when considered together, they "warranted further investigation").  With regard to the generic description Officer Madera relied on, the court stated, "We have held that generic suspect descriptions and crime-scene proximity can warrant reasonable suspicion where there are few or no other potential suspects in the area who match the description."  *Id.* at 699.

Likewise in this case, based on the totality of the circumstances, Palmer's proximity to the accident, a suspect description matching Palmer's race, gender and some articles of clothing, the lack of other pedestrians in the area, and his suspicious reaction after noticing Officer Meyer— there was reasonable suspicion to stop Palmer.  *See Quinn*, 812 F.3d at 700.  Therefore, it is recommended that Palmer's Motion to Suppress Evidence and Statements be denied.

Accordingly, for the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Palmer's Motion to Suppress Evidence and Statements should be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact.  *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of January, 2020.